IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BRET STEVEN FOXSON,           *

   *Appellant*,                 *

   v.                           *   Civil Action No. RDB-23-2843
                                                       *   Bankruptcy Case No. 20-0205
NORTH AMERICAN SPECIALTY
INSURANCE COMPANY,            *

   *Appellee.*                  *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## **MEMORANDUM OPINION**

In this appeal, Defendant-Appellant Bret Foxson, the debtor, asks this Court to reverse the United States Bankruptcy Court for the District of Maryland's grant of summary judgment in favor of Plaintiff-Appellee North American Specialty Insurance Company ("NASIC"). NASIC sought a declaratory judgement that its claims against Foxson's joint property with his wife Amy Foxson were not subject to discharge following his wife's earlier Chapter 13 bankruptcy. The bankruptcy court determined that NASIC did not have notice of Amy's bankruptcy case and accordingly found that NASIC's claims in the Foxson's joint property were not discharged. It therefore granted summary judgment in favor of NASIC.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 158(a)(1), which extends jurisdiction to the United States District Courts to hear appeals from the final judgments, orders, and decrees of the United States Bankruptcy Courts. Because the facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument, a hearing is unnecessary. *See* Fed. R. Bankr.

P. 8019(b)(3); *see also* Local Rule 105.6 (D. Md. 2023). For the reasons stated below, the September 29, 2023, Order of United States Bankruptcy Judge Nancy V. Alquist is AFFIRMED.

**BACKGROUND**

In 2007, Defendant-Appellant Bret Foxson opened an HVAC company called B&B Technologies, LLC, which subsequently became known by its tradename, ComfortTech ("the Company"). (ECF No. 10-7 at 21.) Bret's wife Amy became a member of the Company. (*Id.*) To fund construction projects in 2016, the Company obtained seven surety bonds through Sandy Spring Insurance Corporation. (*Id.* at 21–22.) To obtain the bonds, Bret and Amy signed a General Indemnity Agreement both as individuals and on behalf of the Company. (*Id.*) The agreement requests "that North American Specialty Insurance Company, Washington International Insurance Company, North American Capacity Insurance Company, Westport Insurance Corporation, and any existing or future affiliates, subsidiaries, divisions, successors, assigns, co-sureties, or reinsurers ('Surety') execute or procure the execution of surety bonds ('Bond' or 'Bonds')." (ECF No. 1-1 at 6.) Plaintiff-Appellee North American Specialty Insurance Company ("NASIC") issued seven bonds to the Company. (*Id.* at 7.) When claims were made against those bonds, NASIC sent nine letters to the Company and to Bret. (*Id.* at 8.) Amy directly received one letter and was copied on another two. (*Id.*) All of the letters listed NASIC's address as 1450 American Lane, Suite 1100, Schaumburg, IL 60173. (*Id.*)

Financial troubles arose, and in 2019 Amy Foxson filed a Chapter 13 bankruptcy petition. (ECF No. 10-7 at 23.) In her schedules, Amy listed "North American Surety" as a creditor based on a debt incurred as a "co-indemnitor on surety bond for company." (ECF

No. 1-1 at 8.) For North American Surety's address, Amy listed the address of another company, JW Surety Bonds: 6023A Kellers Church Road, Pipersville, PA 18947. (ECF No. 10-7 at 25.) The Foxsons have alleged that she did so because she and Bret believed that it was part of NAS Surety Group, which was listed at the top of the indemnity agreement. (*Id.*) Nevertheless, the Foxsons did not review the indemnity agreement when preparing their bankruptcy schedules. (ECF No. 11-1 at 19.) The undisputed record reflects that Amy Foxson did not list NASIC as a creditor. (ECF No. 10-7 at 23.) Accordingly, having not been notified, NASIC did not file a proof of claim. (ECF No. 1-1 at 9.) After Amy Foxson completed her plan payments and received a discharge, her bankruptcy case was closed on January 31, 2020. (ECF No. 10-7 at 23.)

A month later, Bret Foxson filed a Chapter 7 bankruptcy petition that was converted to a Chapter 11 case in 2021. (*Id.*) He listed the same creditor and address as Amy: North American Surety at 6023A Kellers Church Road, Pipersville, PA 18947 (the address of JW Surety). (*Id.*) Ultimately, later in 2020, Bret amended his schedules to include NASIC as a creditor, and he listed its address as 1450 American Lane, Suite 1100, Schaumburg, IL 60173. (*Id.*) Around that time, the Chapter 7 Trustee notified NASIC of the Foxsons' bankruptcy cases and filed a proof of claim in Bret's case. (*Id.*)

On July 6, 2020, NASIC filed the complaint in this case, seeking a declaratory judgment that its claims were not discharged by Amy's bankruptcy. (ECF No. 1-2 at 9.) It moved for summary judgment, which the bankruptcy court granted on September 29, 2023. (ECF No. 1-1 at 1.) Bret Foxson filed a timely notice of appeal on October 13, 2023. (ECF No. 1-2 at 2.)

3

**STANDARD OF REVIEW**

This Court reviews the bankruptcy court's grant of summary judgment *de novo*, applying the standards under Federal Rule of Civil Procedure 56. *In re Schek*, 397 B.R. 752, 755 (D. Md. 2008); *see also Roberts v. Gestamp W. Va., LLC*, 45 F.4th 726, 732 (4th Cir. 2022). Rule 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine dispute over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "A party who bears the burden of proof on a particular claim must factually support each element of his or her claim." *In re Schek*, 397 B.R. at 755 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

**ANALYSIS**

Debtors are required to list the names and addresses of all creditors in their schedules to ensure sufficient notice. 11 U.S.C. § 521(a)(1). A debt will not be discharged if the creditor lacked "notice or actual knowledge of the case in time for . . . timely filing" a proof of claim. *Id.* § 523(a)(3)(A). "A debtor bears a continuing duty to amend his or her bankruptcy schedules to disclose newly discovered claims and assets . . . ." *Canterbury v. J.P. Morgan Acquisition Corp.*, 958 F. Supp. 2d 637, 651 (W.D. Va. 2013), *aff'd sub nom. Canterbury v. J.P. Morgan Mortg. Acquisition Corp.*, 561 F. App'x 293 (4th Cir. 2014). Debtors must use "reasonable diligence" to identify creditors. *In re J.A. Jones, Inc.*, 492 F.3d 242, 250 (4th Cir. 2007). This requires a

4

"careful examination" of "the debtor's own books and records." *Id.* (quoting *Chemetron Corp. v. Jones*, 72 F.3d 341, 347 (3d Cir. 1995)).

The core of this dispute is whether the Foxsons used reasonable diligence when they failed to list NASIC as a creditor in Amy Foxson's earlier bankruptcy petition. They did not. The Foxsons did not consult the indemnity agreement, the bonds, or communications from NASIC when listing creditors in their schedules. (ECF No. 11-1 at 19, 24–25.) Instead, they listed North American Surety—a company that does not appear in the indemnity agreement or the bonds, and apparently does not exist at all. For this company's address, they listed the address of another company: JW Surety Bonds. The Foxsons knew that this address belonged to another company. (ECF No. 10-7 at 25.) Although Bret argues that he was confused by differing results upon googling "NAS Surety," he need only consult the indemnity agreement, the bonds, communications from NASIC, or his attorney to identify NASIC as a creditor and to list NASIC's correct address. The Foxsons' decision to list an address of a company other than NASIC is particularly egregious because they were both represented by counsel at the time they filed their bankruptcies, and they could have simply asked for their counsel's assistance. Instead, they stitched the address of one company to the name of another, neither of which belonged to NASIC. This decision lacked reasonable diligence.

Bret Foxson incorrectly argues that NASIC was not a known creditor. NASIC's identity was "reasonably ascertainable" through "reasonably diligent efforts." *Tulsa Pro. Collection Servs., Inc. v. Pope*, 485 U.S. 478, 491 (1988) (quoting *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 n.4 (1983)). Bret does not dispute that he and his wife signed the indemnity agreement, which clearly identifies NASIC. The Company (of which they were members)

5

received seven bonds issued by NASIC. Bret and the Company received nine letters from NASIC, and Amy received three. Bret's argument that he and his wife could ignore the letters sent from NASIC because they thought the letters applied only to the Company fails to pass muster. Bret and Amy were jointly and severally liable with the Company under the indemnity agreement, which they signed to secure bonds for the Company. It would make no sense for the Foxsons to disregard communications from NASIC regarding those bonds simply because they were not individual parties to the bonds. The indemnity agreement explicitly mentions NASIC as a potential bond-issuer. It nowhere mentions JW Surety. Using JW Surety's address contradicted plain sense. And to the extent that the Foxsons "focused on the only document that created liability for them individually -- the Indemnity Agreement," even the most cursory review of the indemnity agreement reveals NASIC as a potential creditor. (ECF No. 10 at 22.) The Foxsons therefore failed to take basic steps in consulting their own books and records, demonstrating an unreasonable lack of diligence. *Cf. Mennonite*, 462 U.S. at 798 n.4 (citing *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 317 (1950)).

As an alternative, Bret Foxson argues that NASIC's claims were nevertheless discharged because NASIC received notice through other means.[1] (ECF No. 10 at 24.) First,

---

[1] In her opinion, Judge Alquist analyzed § 523(a)(3) of the Bankruptcy Code, which provides that there is no discharge from any debt in the event that a creditor is not listed appropriately. 11 U.S.C. § 521(a)(3). A creditor seeking a determination of nondischargeability has the burden of proof and must show that the debt is nondischargeable by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286 (1991); *see also In re Rountree*, 478 F.3d 215, 220 (4th Cir. 2007). In this case, NASIC clearly did that to the satisfaction of Judge Alquist. Three conditions have clearly been met: (1) the debt of Amy Foxson to NASIC was not appropriately scheduled in her bankruptcy papers, and NASIC was not given appropriate time to file a complaint; (2) NASIC was clearly known to both Bret and Amy Foxson as a debtor; and (3) Judge Alquist found as a matter of fact that NASIC did not have appropriate actual notice or knowledge of the earlier bankruptcy case. Judge Alquist made a specific factual finding in her opinion that NASIC was neither listed nor scheduled as required by § 521(a)(1) of the bankruptcy code and Bankruptcy Rule 1007(A)(1). Accordingly, based on that

Bret argues that he mentioned Amy's bankruptcy to NASIC's attorney-in-fact Wes Pumphrey during a phone call. But Bret only spoke with Mr. Pumphrey while hiring Sandy Spring Insurance Corporation to procure bonds for the Company. *See In re Morris*, 615 B.R. 189, 194 (Bankr. D. Md. 2020) ("Many courts have refused to impute an attorney's notice of a bankruptcy case to a client where the notice was provided to the attorney while working on behalf of a different client."). Moreover, Mr. Pumphrey does not recall ever being notified of Amy's bankruptcy. (ECF No. 11-1 at 43.) Even if he had been, there is nothing in the record demonstrating that Mr. Pumphrey had "knowledge of facts sufficient to apprise the creditor that a case was actually filed, and where the proceeding is pending." *In re Taylor*, No. 07-18102-TJC, 2009 WL 3398711, at *5 (Bankr. D. Md. Oct. 2, 2009).

Second, Bret Foxson argues that Amy Foxson's bankruptcy was disclosed during a July 20, 2019, meeting with Sandy Spring Bank. Bret contends that any knowledge gained during that meeting should be imputed to Sandy Spring Insurance, a subsidiary of Sandy Spring Bank. In turn, he argues Sandy Spring Insurance's knowledge should be imputed to NASIC because it was a representative of NASIC. As the bankruptcy court correctly noted, this attenuated chain lacks support in the law and the record, and it cannot form the basis of Bret's actual knowledge defense.

Lastly, Bret Foxson argues that knowledge can be imputed to NASIC because no mail was returned to the bankruptcy court as undeliverable. Presumption of receipt upon mailing

---

finding, the burden shifted to Bret Foxson to show that NASIC as a creditor had timely notice or actual knowledge of his wife's bankruptcy case. Judge Alquist addressed several proffers of evidence by the debtor and rejected all of them in making the factual finding that NASIC was not appropriately put on notice.

is inapplicable here because the Foxsons used an admittedly incorrect address for NASIC. *Fed. Deposit Ins. Corp. v. Schaffer*, 731 F.2d 1134, 1137 n.6 (4th Cir. 1984) (noting that, for the presumption to apply, the mail must be "properly addressed"). The decision of John Weisbrot, the owner of JW Surety, to forward a notice of Bret's bankruptcy to NASIC does nothing to change that fact. For one, the presumption is not resurrected by the actions of a third party when an incorrect address is used. More importantly, the notice at issue regards Amy's case, not Bret's. Because the Foxsons did not mail any notice of Amy's case to NASIC, Bret's presumption of receipt argument fails.

In sum, none of Bret Foxson's arguments on appeal compel this Court to disturb the Bankruptcy Court's order.

## CONCLUSION

For the reasons stated above, the September 29, 2023, Order of United States Bankruptcy Judge Nancy V. Alquist is AFFIRMED.

A separate Order follows.

Dated: July 1, 2024

/s/
Richard D. Bennett
United States Senior District Judge